UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Eugene Sullivan,

             Petitioner,

   vs.                      REPORT AND RECOMMENDATION

Carol Holinka, Warden,
and Harley G. Lappin,
Director,[1]

             Respondents.      Civ. No. 06-645 (RHK/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

I.  Introduction

This matter came before the undersigned United States Magistrate Judge

pursuant to a general assignment, made in accordance with the provisions of Title 28

U.S.C. §636(b)(1)(B), upon the Petition of Eugene Sullivan for a Writ of Habeas

Corpus, under Title 28 U.S.C. §2241.  The Petitioner claims that the Federal Bureau

of Prisons ("BOP") has denied him the opportunity to have his sentence reduced,

---

[1]The Petitioner named Kathleen Hawk, Director ("Hawk"), as a Respondent in
his initial Petition.  However, pursuant to Rule 25(d)(1), Federal Rules of Civil
Procedure, Harley G. Lappin, who was named the Director of the Bureau of Prisons
("BOP") on April 4, 2003, is automatically substituted for Hawk as a named
Respondent.

pursuant to Title 18 U.S.C. § 3621(e), in violation of his rights under Federal law, and the United States Constitution.  For reasons which follow, we recommend that the Petition for a Writ of Habeas Corpus be dismissed.

## II.  Facts and Procedural Background

On November 3, 2005, the Petitioner was sentenced to a thirty seven (37) month prison term, to be followed by three (3) years of supervised release, by the United States District Court for the Western District of Missouri.  The Petitioner was sentenced following a conviction for possession of a firearm by a felon, in violation of Title 18 U.S.C. §922(g)(1).  See, Declaration of Kara Christenson ("Christenson Dec."), Docket No. 6, at ¶3; Att. A.

On January 30, 2006, the Petitioner, while incarcerated at the Federal Correctional Institution in Waseca, Minnesota ("FCI-Waseca"), began his participation in a five-hundred (500) hour Residential Drug Abuse Program ("RDAP").  See, Christenson Dec., at ¶5; Att. E.  RDAP is a program provided by the BOP, pursuant to Title 18 U.S.C. §3621(b).  According to that Statute, the BOP is directed to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance addiction or abuse." Title 18 U.S.C. §3621(b).  The RDAP program is "a course of individual and group

activities provided by a team of drug abuse treatment specialists and the drug abuse

treatment coordinator in a treatment unit set apart from the general prison population,

lasting a minimum of 500 hours over a six to twelve-month period." 28 C.F.R.

§550.56.

In order to qualify for participation in the RDAP, an inmate must meet all of the

following criteria:

> (1)    The inmate must have a verifiable documented drug
> abuse problem.
>
> (2)    The inmate must have no serious mental impairment
> which would substantially interfere with or preclude full
> participation in the program.
>
> (3)    The inmate must sign an agreement acknowledging
> his/her program responsibility.
>
> (4)    Ordinarily, the inmate must be within thirty-six
> months of release.
>
> (5)    The security level of the residential program
> institution must be appropriate for the inmate.

28 C.F.R. § 550.56(a).

In order to give inmates an additional incentive to participate in the RDAP, Congress

has authorized the BOP to grant sentence reductions of up to one (1) year for those

who successfully complete the program.   This authority comes from Section

3621(e)(2)(B), which provides as follows:

-3-

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

Congress did not define the term "prisoner convicted of a nonviolent offense," which would encompass the largest potential class of inmates who would be eligible for a sentence reduction upon completion of the RDAP.

In a first attempt to construe the Statute, the BOP promulgated a Regulation, which defined the term "nonviolent offense," as employed in Section 3621(e)(2)(B), in the negative, by incorporating the following statutory definition of "crime of violence:"

> An inmate who completes a residential drug abuse treatment program during his or her current commitment may be eligible for early release by a period not to exceed 12 months, in accordance with paragraph (a) of this section * * * **unless the inmate's current offense is determined to be a crime of violence** as defined in 18 U.S.C. §924(c)* * *.

28 C.F.R. §550.58 [emphasis added][later amended].

According to Title 18 U.S.C. § 924(c)(3), the term "crime of violence" is defined as:

> [A]n offense that is a felony and --

> > (A)   has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> > (B)    that by its nature, involves a substantial
> > risk that physical force against the person or
> > property of another may be used in
> > committing the offense.

On July 24, 1995, the BOP issued Program Statement ("P.S.") 5162.02 which, in

pertinent part, enumerated the offenses that the BOP then categorized as "crimes of

violence." P.S. 5162.02 also identified certain "offense characteristics," which were

reflected in sentencing enhancement factors, and which might cause the BOP to treat

a particular offense as a "crime of violence" for purposes of Section 3621(e)(2)(B).

One such enhancement factor was the possession of a firearm.  See, Martin v.

Gerlinski, 133 F.3d 1076, 1078-79 (8th Cir. 1998).[2]

---

[2]In Martin v. Gerlinski, 133 F.3d 1076, 1078-79 (8th Cir. 1998), the Court
explained the relevant portion of the Program Statement as follows:

> > To further interpret the term 'crime of violence,' the BOP
> > issued Program Statement 5162.02 (July 24, 1995), which
> > contains an exhaustive list of criminal offenses it has found
> > to be crimes of violence.  Section 9 provides that one
> > category of criminal offenses may be crimes of violence
> > depending on the specific offense characteristic assigned.
> > Where, at the time of sentence, the district court makes a
> > finding that the offense involved violence, and this finding
> > is reflected in the section of the presentence investigation
> > report entitled, "Specific Offense Characteristics," that
> > conviction is considered a 'crime of violence.'  Section 9
> > cites as an example a defendant who has been convicted of
> > manufacturing drugs and receives a 2-level enhancement

The BOP modified its offense classification scheme for determining an inmate's eligibility for early release, by amending 28 C.F.R. §550.58, and its Program Statements.  The Regulation was amended, and published as an "interim rule," on October 15, 1997, with an effective date of October 9, 1997.  See, <u>Early Release Consideration</u>, 62 <u>Fed. Reg.</u> 53,690, 53,690 (1997).  The amended Regulation, which was adopted according to a notice and comment procedure, no longer incorporated the definition of a "crime of violence," as contained in Section 924(c).[3]  Instead, the new Section 550.58(a) states that inmates, who are convicted of nonviolent offenses, may

_____

for possession of a firearm.

[3]The BOP described its purpose, in amending the Regulation, as a response to conflicting judicial interpretations of the provision, as follows:

> The interim rule published on May 25, 1995, attempted to define the term "crime of violence" pursuant to 18 U.S.C. 924(c)(3).  Because of differences in application of case law among the various Federal courts, a few crimes would be clearly covered by the Bureau's definition.  This interim rule avoids this complication by using the discretion allotted to the Director of the Bureau of Prisons in granting a sentence reduction to exclude inmates whose current offense is a felony * * * that involved the carrying, possession, or the use of a firearm or other dangerous weapon or explosives * * *.

<u>Early Release Consideration</u>, <u>62 Fed. Reg. 53,690</u> (amending <u>28 C.F.R. §550.58</u>).

be eligible for a sentence reduction, but it sets forth a listing of "[a]dditional early

release criteria," as follows:

> (1)    As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:
>
> *    *    *
>
> (vi)    Inmates whose offense is a felony:
>
> (A)    That has as an element, the actual, attempted or threatened use of physical force against the person or property of another, or
>
> (B)    That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device) * * *.

28 C.F.R. §550.58.

The final version of the Regulation was adopted on December 22, 2000.  See, 65 Fed.

Reg. 80,745 (2000).

In addition, on October 9, 1997, the BOP promulgated a new Program

Statement -- P.S. 5162.04, entitled "Categorization of Offenses" -- in which the BOP

lists, at Section 6, those offenses that, in all cases, are considered to be "crimes of

violence."  See, Christenson Dec.; Att. D.  The new Program Statement also lists, at

Section 7, "Offenses That At The Director's Discretion Shall Preclude An Inmate's

Receiving Certain Benefits."  According to Section 5 of P.S. 5162.04:

> Section 7 lists offenses that are not categorized as crimes of violence, but would nevertheless preclude an inmate's receiving certain Bureau program benefits at the Director's discretion * * *.  [I]f an inmate is convicted of an offense listed in Section 7, the inmate should be denied a program benefit **because he or she committed an offense identified at the Director's discretion, rather than a crime of violence**.

[Emphasis added].

Section 7 of P.S. 5162.04 provides that inmates, who are convicted under Title 18 U.S.C. §922(g) will be precluded from certain "program benefits," including the opportunity for a reduced sentence under Section 3621(e)(2)(B).  Thus, under the new P.S. 5162.04, a prisoner, such as the Petitioner, who has been convicted of possession of a firearm by a felon, will be barred from receiving a reduced sentence -- not because he has been convicted of a violent offense, but because the BOP has exercised its discretion in determining that he should not be granted an opportunity for early release.

On January 18, 2006, the Petitioner was determined by FCI-Waseca staff,  to be ineligible for early release under Title 18 U.S.C. §3621(e).  See, Christenson Dec., at ¶4; Att. B.  The basis for the Petitioner's eligibility determination stemmed from an assessment of the circumstances in his case -- specifically his conviction for

possession of a firearm by a felon -- based upon the BOP Director's discretion as contained in P.S. 5162.04. Id.

As previously noted, the Petitioner began treatment in the RDAP program on January 30, 2006. We note that is unclear from the Record if the Petitioner has actually completed the program.[4] However, the Respondents represent that he will not be eligible for early release consideration, even in the event that he successfully completes the program. See, Government's Response, Docket No. 5. The Petitioner currently has a projected release date of April 16, 2007, via Good Conduct Time release. See, Christenson Dec., Att. A.

The Respondents argue that the Petitioner has not exhausted his administrative remedies, as to the BOP policy, and the determination that he is ineligible for early release, prior to bringing this Habeas Petition. See, Government's Response, Docket No. 5, at pp. 4-6. However, the Petitioner argues that any efforts to exhaust his

---

[4]The Petitioner attempted to consolidate his Habeas Petition with those filed by several other prisoners housed at FCI-Waseca. See, Docket No. 2. We note that filings in those other cases, purportedly signed by the Petitioner, provide that he has discontinued the RDAP program. See, e.g., Motion to Supplement and to Dismiss, Kiner v. Holinka, Civ. No. 06-498 (RHK/RLE), Docket No. 23. Given that there was no filing of that document in this action, we presume, but make no express determination, as to the Petitioner's status and progress in the RDAP program. However, given the ultimate recommendation we make, we find that a determination of the Petitioner's status is unnecessary for our resolution of the issues presented.

remedies would be futile, as the BOP would merely deny his efforts, pursuant to the existing policy.  See, <u>Petition</u>, at p. 9.  The Petitioner, on February 17, 2006, filed his present application for Habeas Corpus relief, under Title 28 U.S.C. §2241, and asks that we issue a Writ of Habeas Corpus that would direct the BOP to find him eligible for a one-year sentence reduction, under Section 3621(e)(2)(B).  In contrast, the Respondents contend that the Petitioner's application should be dismissed, because the Petitioner, under the standards implemented under the discretion of the Director, was appropriately found to be ineligible for early release.

For reasons which follow, we agree with the Respondent's position, that the Petitioner is not entitled to early release, and therefore, we recommend that the Petition be dismissed.

### III.   <u>Discussion</u>

The Petitioner filed this Habeas Petition under Title 28 U.S.C. §2241, alleging that the BOP failed to comply with the Administrative Procedures Act ("APA") in promulgating P.S. 5162.04.  In addition, the Petitioner asserts that his constitutional rights were violated by denying him an early release, after his completion of the RDAP,  pursuant to P.S. 5162.04 --  which, he argues, conflicts with Title 18 U.S.C. §3621(e)(2)(B).  We address each of his contentions, in turn.

A.   <u>Exhaustion of Administrative Remedies</u>.  As of the date on which the Petitioner filed his Petition for Habeas relief, he had not fully exhausted, let alone sought, any of his administrative remedies as to the issues raised in his Petition. However, under similar circumstances, other Courts have concluded that exhaustion is futile and not a bar to Habeas review.  See, <u>Gibson v. Berryhill</u>, 411 U.S. 564, 575 n. 14 (1973)(noting that Courts have not required the exhaustion of administrative remedies where the administrative agency had "predetermined the issue before it"); <u>Elwood v. Jeter</u>, 386 F.3d 842, 845 n.1 (8th Cir. 2004)(noting that the Government had waived the exhaustion requirement because it conceded that continued use of the grievance procedure to contest the validity of the BOP's policy would be futile); <u>Knish v. Stine</u>, 347 F. Supp. 2d 682, 686-87 (D. Minn. 2004).   Accordingly, the Petitioner's failure to exhaust his administrative remedies, as to the BOP's policy, is excused.

B.   <u>Was the BOP Required to Follow the Procedural Requirements of the APA in promulgating Program Statement 5162.04</u>?

Administrative agencies are required, under the APA, to provide for notice and comment before promulgating a rule.[5]   See, <u>Title 5 U.S.C. §553(b)</u>.

---

[5]In regard to the procedures required for rulemaking, Section 553 of the APA states as follows:

Additionally, publication in the Federal Register of a substantive rule shall not be made less than thirty (30) days before the effective date.  See, <u>Title 5 U.S.C. §553(d)</u>.

———————————————

> (b)     General notice of proposed rule making shall be published in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. The notice shall include –
>
>> (1)     a statement of the time, place, and nature of public rule making proceedings;
>>
>> (2)     reference to the legal authority under which the rule is proposed; and
>>
>> (3)     either the terms or substance of the proposed rule or a description of the subjects and issues involved.
>
> Except when notice or hearing is required by statute, this subsection does not apply--
>
>> (A)     to   interpretative   rules,   general statements of policy, or rules of agency organization, procedure, or practice; or
>>
>> (B)     when the agency for good cause finds (and incorporates the finding and a brief statement of reasons therefor in the rules issued) that notice and public procedure thereon are impracticable, unnecessary, or contrary to the public interest.

<u>Title 5 U.S.C. §533(b)</u>.

However, interpretive rules are statutorily exempted from notice and comment procedures.  See, Title 5 U.S.C. §553(b) and (d).

The distinctions  between an "interpretive," and a "substantive" rule, are not addressed in the APA, leaving the Courts to muddle through the resulting morass. One Court has attempted to parse out the differences by stating that a "substantive rule 'grants rights, imposes obligations, or produces other significant effects on private interests,' while an interpretive rule is an agency's 'intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities.'"  White v. Shalala, 7 F.3d 296, 303 (2nd Cir. 1993).   One commentator has summarized the multiple Courts' approaches as "'fuzzy,' 'tenuous,' 'blurred,' 'baffling,' and 'enshrouded in considerable smog.'" Elizabeth Williams, Annotation, What Constitutes "Interpretative Rule" of Agency so as to Exempt Such Action from Notice Requirements of Administrative Procedure Act (Title 5 U.S.C. § 553(b)(3)(A)), 126 A.L.R. Fed. 347, 375 (1995)(surveying the distinctions relied upon in multiple cases).

Thankfully, the Supreme Court has provided guidance, by stating that BOP Program Statements are "internal agency guideline[s]," and are "akin to an 'interpretive rule' that 'do[es] not require notice and comment." See, Reno v. Koray,

515 U.S. 50, 61 (1995).  Numerous Courts have followed that observation, and have generally found that BOP Program Statements are exempt from formal notice and comment requirements.   See, e.g., <u>Grassi v. Hood</u>, 251 F.3d 1218, 1220 (9th Cir. 2001), quoting <u>Reno v. Koray</u>, supra; <u>Egan v. Hawk,</u> 983 F. Supp. 858, 861 (D. Minn. 1997); <u>Sicard v. City of Sioux City</u>, 950 F. Supp. 1420, 1434 (N.D. Iowa 1996); see also, <u>Henrikson v. Guzik</u>, 249 F.3d 395, 398 (5th Cir. 2001).

Not every Program Statement, however, has been exempted from the notice and comment procedure.  One such BOP Program Statement -- P.S. 5162.02 -- was found by a number of Circuits  to cross the boundary between an interpretive and legislative rule, and was found invalidly promulgated by having contravened the APA's procedures.  See, e.g., <u>Martin v. Gerlinski</u>, supra at 1079 ("We conclude Section 9 of the Program Statement constitutes a legislative rather than an interpretive rule, because it does not merely "explain" what is a 'crime of violence' within the parameters of the meaning of the offense itself or by way of the definition accorded it under the regulation; it expands the scope of the conduct under consideration, thus extending the reach of the regulation."); see also, <u>Fristoe v. Thompson</u>, 144 F.3d 627, 631 (10th Cir. 1998); <u>Byrd v. Hasty</u>, 142 F.3d 1395, 1397 (11th Cir. 1998); <u>Bush v.</u>

Pitzer, 133 F.3d 455, 457 (7th Cir. 1997); Roussos v. Menifree, 122 F. 3d 159, 162-64 (3rd Cir. 1997).

The BOP later promulgated P.S. 5162.04 in response to the judicial determinations that the BOP had failed to follow APA procedure in issuing P.S. 5162.02. The critical difference between the Program Statements is that the newer version vests the Director of the BOP with discretion when determining who to exclude from early release under Title 18 U.S.C. §3621(e), rather than engaging in explicit statutory interpretation of the term "nonviolent offense." See, Gunderson v. Hood, 268 F.3d 1149, 1152 (9th Cir. 2001).

Our Court of Appeals addressed the validity of 28 C.F.R. §558.58, and P.S. 5162.04, in Bellis v. Davis, 186 F.3d 1092 (8th Cir. 1999), aff'd sub nom. Lopez v. Davis, 531 U.S. 230 (2001), which adopted the BOP's arguments as they have been advanced here. In Bellis, a number of prisoners, who either "had been convicted of being a felon in possession of a firearm, or * * * had received a sentencing enhancement under the federal sentencing guidelines for possession of a dangerous weapon during the commission of a federal drug offense," complained because the BOP had exercised its discretion, as explicated in P.S. 5162.04, to deny the prisoners' requests for a sentence reduction, even though the prisoners either had completed, or

were scheduled to complete, the BOP's RDAP.  Id. at 1092.  Although the District

Court had been persuaded that the prisoners were entitled to Habeas relief, the Court

of Appeals reversed that decision, explaining as follows:

> The BOP chose to exercise the discretion granted to it
> under the statute by identifying additional categories of
> inmates who are ineligible for the early-release program
> because, although their offenses may be "nonviolent"
> within the meaning of the statute, their underlying conduct
> indicates that they pose a serious risk to public safety.  We
> think that the BOP's decision to exclude these additional
> categories of inmates from eligibility represents a
> manifestly permissible construction of the statute and an
> appropriate exercise of the BOP's discretion.
>
> *    *    *
>
> We conclude that the BOP acted within its authority in
> excluding the [prisoners] from the early-release program
> under 18 U.S.C. §3621(e)(2).

Id. at 1095.

An appeal of the decision, in Bellis, was taken to the United States Supreme Court,

which affirmed the reasoning of our Court of Appeals, and concluded as follows:

> Having decided that the Bureau may categorically exclude
> prisoners based on their preconviction conduct, we further
> hold that the regulation excluding Lopez is permissible.
> The Bureau reasonably concluded that an inmate's prior
> involvement with firearms, in connection with the
> commission of a felony, suggests his readiness to resort to
> life-endangering violence and therefore appropriately
> determines the early release decision.

-16-

Lopez v. Davis, supra at 244.[6]

The Eighth Circuit has reconfirmed the validity of the Regulation, and P.S. 5162.04,

subsequent to Bellis and Lopez.  See, Grove v. Federal Bureau of Prisons, 245 F.3d

743, 746-47 (8th Cir. 2001).

Other Courts, particularly in the Ninth Circuit, have questioned the validity of

both Section 550.58, and P.S. 5162.04.  In fact, the Petitioner cites the holding of

Paulsen v. Daniels, 413 F.3d 999, 1008 (9th Cir. 2005), which found the interim 1997

regulation, that is codified at Section 550.58(a), to be a "substantive" rule and invalid

for failing to provide thirty (30) days for the notice and comment required by Section

553(b), (c), and (d), of the APA.  Still other Courts, including one in this District, have

disagreed with the Ninth Circuit, and have recently determined that P.S. 5162.04 is

an "interpretive" rule, construing both Title 18 U.S.C. §3621(e), and the final 2000

codification of the Regulation, 28 C.F.R. §550.58.  See, e.g., Gibson v. Walton, 2006

WL 1428274 at *3 (D. Minn., May 23, 2006); Thomas v. Middlebrooks, 2006 WL

3020825 at *4 (N.D. Fla., October 19, 2006); McKenzie v. Terrell, 2006 WL 1764344

_____

[6]While upholding the Regulation, the Supreme Court did not address whether
the BOP violated the notice and comment procedure of the APA in issuing the interim
1997 rule, as that issue was not before the Court.  See, Lopez v. Davis,  531 U.S. 230,
244 n. 6 (2001).

at *6 (D. Kan., June 27, 2006); <u>Sizemore v. Marberry</u>, 2005 WL 1684132 at *3-4 (E.D. Mich. 2005).

Absent reversal by a Court of superior jurisdiction, we are obligated to adhere to the precedent established in <u>Lopez v. Davis</u>, supra at 244, <u>Bellis v. Davis</u>, supra at 1092, and <u>Grove v. Federal Bureau of Prisons</u>, supra at 746-47, which all have upheld the validity of the BOP's P.S. 5162.04, and determinations concerning the eligibility for sentence reduction upon completion of RDAP,  as falling within the discretion of the BOP Director.   Even if, as the Petitioner suggests, the 1997 interim regulation in 28 C.F.R. §550.58 was improperly promulgated -- and we make no such determination here -- the Program Statement would not be affected as it is an "internal agency guideline" that merely vests discretion in the Director to interpret what Title 18 U.S.C. §3621(e) defines as a "nonviolent  offense."  See, <u>Grassi v. Hood</u>, supra at 1221;  <u>Sizemore v. Marberry</u>, supra at *3-4; see also, <u>Reno v. Koray</u>, supra at 61 (finding  BOP Program Statements are "internal agency guidelines," that are interpretive rules not subject to APA notice and comment procedures); <u>Egan v. Hawk,</u> supra at 861.  Lastly, we note that the Petitioner entered, the RDAP program nearly four (4) years **after** the final regulation was adopted, see, 65 <u>Fed. Reg.</u> 80,745 (2000),

and that his request for sentence reduction is governed by the final version of the regulation, and not the interim rule.

Therefore, as P.S. 5162.04 has been determined to be an "interpretive" rule, the notice and comment procedure requirements of the APA are inapplicable. See <u>Title 5 U.S.C. §§553(b) and (d)(2)</u>; see also, <u>Grassi v. Hood</u>, supra at 220. With the recognized substantive validity of 28 C.F.R. §550.58(a), and P.S. 5162.04, it is well within the discretion of the BOP Director to deny eligibility for early release under Title 28 U.S.C. §3621(e). Therefore, we recommend that the Petitioner's request for Habeas relief on this ground be denied.

C. <u>Were the Petitioner's Constitutional Rights Violated By the BOP's Discretion in Denying Consideration for Early Release Under Title 18 U.S.C. Section 3621(e)</u>?

The Petitioner also contends that the BOP's reliance upon the discretion of the Director, rather than upon an interpretation of the term "nonviolent offense," violates his constitutional rights, by denying him consideration for early release as required by Title 18 U.S.C. §3621(e).

Simply put, the equal protection clause mandates that all persons, who are similarly situated, should be treated alike. See, <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); <u>More v. Farrier</u>, 984 F.2d 269 (8th Cir. 1993).

The guarantee of equal protection is not a source of substantive rights or liberties, but rather, is a right to be free from invidious discrimination in statutory classifications, and other Government entitlements.  See, Harris v. McRae, 448 U.S. 297, 322 (1980), reh'g denied, 448 U.S. 917 (1980).  An action claiming a violation of this right must show, on its face, that some element of intentional or purposeful discrimination accompanied the unequal treatment.  See, Snowden v. Hughes, 321 U.S. 1, 8 (1944). The discriminatory purpose essential to an equal protection claim implies more than intent or volition; rather, it implies that the violator selected or reaffirmed a particular course of action at least in part because of -- not merely in spite of -- its adverse effects upon an identifiable group.  See, McCleskey v. Kemp, 481 U.S. 279, 298 (1987).

In Divers v. Department of Corrections, 921 F.2d 191 (8th Cir. 1990), our Court of Appeals held that principles of equal protection might be violated if a prisoner received treatment that was "invidiously dissimilar" to that received by other, similarly situated inmates.  Id. at 193; see also, Wishon v. Gammon, 978 F.2d 446, 450 (8th Cir. 1992); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987).  However, any apparent infringement of the Plaintiff's equal protection rights, which is brought about by means of prison Regulations or policies, must be judged by a deferential

standard, i.e., whether the policies are reasonably related to legitimate penological interests.  See, Turner v. Safley, 482 U.S. 78, 84 (1987).

Here,  the Supreme Court has noted that the denial of early release to inmates who possessed a firearm in connection with their current offenses reasonably and rationally can be enacted in the interest of public safety, as such inmates have shown a "readiness to endanger another's life."  See, Lopez v. Davis, supra at 721-22. Therefore, the BOP's decision to utilize its allotted discretion, and deny early release to such inmates in the interest of public safety, satisfies the deferential standard, and cannot be construed to have violated any equal protection right possessed by the Petitioner.

As to the Petitioner's claim that he possesses a statutory entitlement to a sentence reduction, we find no basis for finding such an entitlement here.  Section 3621(e) does not grant an entitlement to a mandatory reduction upon the Petitioner's completion of the RDAP, but simply provides that a prisoner's early release entirely lies in the discretion of the BOP.  See, Title 18 U.S.C. §3621(e)(2)(B) (stating that a prisoner's time in custody "**may** be reduced by the Bureau of Prisons")[emphasis added]; Lopez v. Davis, supra at 241; Bellis v. Davis, supra at 1094; Smith v. Reese, 2001 WL 530548 at *2 (D. Minn., May 17, 2001)("Pursuant to §3621(e)(2)(B), if an

inmate serving a sentence for a conviction of a nonviolent offense successfully completes the RDAP, then the BOP has the authority, but not the duty, to reduce the inmate's term of imprisonment."). Consequently, in the absence of an entitlement, the denial of early release to an inmate, pursuant to the BOP's discretion under Section 3621(b), does not render Program Statement 5162.04 invalid. See, Sesler v. Pitzer, 926 F. Supp. 130, 132-33 (D. Minn. 1996)(finding  no recognizable Due Process claim under a similar factual situation); see also, Hernandez v. Lindeman, 2002 WL 31163074 at *3 (D. Minn., September 24, 2002)("Therefore, because [the petitioner] possesses no liberty interest in the early release program under §3621(e), the Court overrules his objection in this regard."). Therefore, we find Petitioner's constitutional rights were not violated.

Finally, to the extent that the Petitioner reargues that we should direct the BOP to reconsider his eligibility for a sentence reduction, we conclude that the BOP is uniquely qualified, in the first instance, to make decisions as to the propriety, as well as the timing, of eligibility determinations for sentence reductions, pursuant to the RDAP program. Cf., Hosna v. Groose, 80 F.3d 298, 303 (8th Cir. 1996), cert. denied, 519 U.S. 860 (1996)("[F]ederal courts ought to afford appropriate deference and flexibility to [prison] officials trying to manage a volatile [prison] environment," and

-22-

"such flexibility is especially warranted in the fine tuning of the ordinary incidents of prison life," in order that the Courts do not "micro manage" prisons.), quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 482-83 (1995).  Accordingly, we recommend that this aspect of the Petitioner's request also be denied, and that his Petition be dismissed.

NOW, THEREFORE, It is - -

RECOMMENDED:

That the Petition for a Writ of Habeas Corpus [Docket No. 1] be dismissed, with prejudice.

Dated:  March 15, 2007                    <u>s/Raymond L. Erickson</u>
                                          Raymond L. Erickson
                                          CHIEF U.S. MAGISTRATE JUDGE

**N O T I C E**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2, any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than March 30, 2007**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this

procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than March 30, 2007**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. § 636 to review the transcript in order to resolve all of the objections made.